**CITY OF HOUSTON, Appellant,**

v.

**SAM P. WALLACE & CO. et al., Appellees.**

**No. 5844.**

Court of Civil Appeals of Texas, Waco.

Nov. 30, 1978.

Rehearing Denied Dec. 21, 1978.

Robert M. Collie, Jr., City Atty., Dale M. Tingleaf, Asst. City Atty., Houston, for appellant.

Robert L. Adams, Wyckoff, Russell, Dunn & Frazier, Simeon T. Lake, III, Fulbright & Jaworski, John A. Barker, Gripp, Walden & McClure, Houston, for appellees.

HALL, Justice.

On October 19, 1971, an explosion and fire damaged the equipment in a high-voltage electrical switchgear cabinet located in the Central Chilled and Hot Water Plant at the Houston Intercontinental Airport, an airport owned and operated by appellant City of Houston (hereinafter "City"). At that time appellee Sam P. Wallace & Co. ("Wallace"), under contract with City, was constructing certain additions to the Central Chilled and Hot Water Plant. Appellee Precision Insulation Company ("Precision") was Wallace's subcontractor on the job. Maurice Little ("Little"), an employee of Precision, was standing on the switchgear box at the time of the explosion and fire and suffered personal injuries. City sued Wallace and Precision for the damages to its electrical switchgear pleading negligent causation against them. In another suit, Little sought recovery of damages against Wallace, asserting his personal injuries were caused by Wallace's negligence. The cases were consolidated for trial after which Wallace and Precision each pleaded for contribution and indemnity against the other. Wallace also pleaded for contribution and indemnity against City for any recovery by Little against Wallace. The consolidated case was tried to a jury.

After the parties had rested their proof, but before arguments to the jury, Little and Wallace entered into a settlement agreement. City was not told of the settlement. Little remained in the case and argued to the jury. After argument, but before verdict, Little took a nonsuit in his case against Wallace. City's counsel was not present in the courtroom when the nonsuit was taken, but his absence is not explained in the record. Thereafter, the jury returned their verdict which was favorable to both Wallace and Precision on the liability issues against them by City. Judgment was rendered on the verdict that City take nothing. The judgment also recited Little's nonsuit of Wallace.

By way of motion for mistrial prior to judgment and motion for new trial after judgment, City asserted that it first learned of the settlement agreement and the nonsuit after verdict when a form-judgment was circulated; that a part of the consideration for the settlement agreement was that Little's attorney would argue against City and in favor of Wallace on City's issues against Wallace; that Little's attorney did so and thereby "deceived the jury into believing that Little had changed his position from that during trial and had been persuaded that Wallace had not, after all, been responsible for or negligently caused the fire in question, and therefore added un-

fairly to the weight of the argument against City's position on the issues"; that if City had known of the settlement prior to argument "it would have offered evidence to such effect so as to allow the jury to know the inducement for co-plaintiff's argument and City would further have objected to any argument by co-plaintiff"; that the trial tactic employed by Little and Wallace of settlement and then argument by Little's attorney in favor of Wallace and against City after Little's "change of posture, alignment and pecuniary interest" without City's knowledge violated "the fundamental rule of law whereby a party is entitled to inform the jury or finder of fact of the pecuniary interest each adverse party has to the outcome of the case"; and that such action denied City a fair trial and caused rendition of an improper verdict and judgment against City.

City's motions were overruled. It assigns error to those rulings for reversal of the judgment and reasserts the complaints set forth in the motions. However, City concedes in its brief that Little's counsel "could have argued in the manner in which he did had it been in his interest as an advocate to do so, or, had he even done so mistakenly"; and it also admits that it knew during the latter portion of the jury argument by Little's counsel that Little's "alignment [against Wallace] was disturbed," and that at that time "it became readily apparent that plaintiff Little had switched sides." Basically, City's complaints are these: (1) If City had known of the settlement prior to verdict it would have offered that fact for the jury's consideration to explain the argument to be made by Little's counsel; and (2) the "secret settlement agreement and resulting jury argument" were a conspiracy by Little and Wallace against City, and they were "so patently unfair and obviously prejudicial" to City that they caused an improper verdict and judgment. We overrule those contentions and affirm the judgment.

The written settlement agreement between Little and Wallace reads in full as follows:

"The undersigned attorneys, after careful review and consideration of all the evidence presented in the case of MAURICE LITTLE VS. SAM P. WALLACE & CO., being tried in the 61st Judicial District Court, have agreed that the evidence is so strong that the SAM WALLACE CO. was not at fault in causing the fire in question, thus the best interest of MAURICE LITTLE will be served if he makes a nominal settlement with the SAM P. WALLACE CO. And thus, MAURICE LITTLE, by his undersigned attorney hereby agrees to settle his case with SAM P. WALLACE & CO. for the sum of $3,200.00, for the approximate amount of his out of pocket expenses."

On the hearing of City's motion for new trial, Little's lawyer testified as follows: "When I settled with Wallace, I agreed primarily not to argue against Wallace. I wanted to see what kind of damages the jury would give me specifically to pain and suffering and mental anguish, which I argued, as well as medical and lost wages. I wanted to argue those to the jury, but I did not stress negligence on the part of Wallace or anyone else for that matter. Whether I was going to argue favorably or unfavorably with regard to the City was not discussed at the time of settlement. The primary thing was that I was not going to argue negligence against Wallace. The real consideration for my settlement was the fact that I would not argue negligence against Wallace. That was the consideration for my settlement. The agreement with Wallace was not at all concerned with the manner I intended to argue any of the issues relating to Precision because I had no issues against Precision. I also had an agreement with City that City would not argue against Little, but City breached this agreement by arguing that Little was negligent when he stepped on top of the main switchgear box." The testimony of Little's counsel to the effect that he agreed only to not argue against Wallace, and that there was no agreement that he would argue for Wallace or against City, was corroborated by the testimony of Wallace's attorney. There was no testimony that Wallace's law-

yer secured or even sought a promise from Little's attorney to keep the settlement agreement and their discussions secret from City.

The evidence adduced at the hearing on City's motion for new trial supports implied findings by the trial court that the only promise made by Little's attorney relating to jury argument when the settlement agreement was reached was simply that he would not argue negligence against Wallace, and that the settlement was not a stratagem born of a conspiracy between Little and Wallace to deny City a fair trial.

To avoid frustrating the policy favoring the settlement of lawsuits, it is the general rule in Texas that a settlement agreement between some of the parties in a multi-party lawsuit should be excluded from the jury. *Miller v. Bock Laundry Machine Co.,* 568 S.W.2d 648, 652 (Tex. 1978); *General Motors Corp. v. Simmons,* 558 S.W.2d 855, 857 (Tex.1977); *McGuire v. Commercial Union Insurance Co.,* 431 S.W.2d 347, 352 (Tex.1968). An exception to that rule is a "Mary Carter" settlement agreement whereby the settling defendant acquires a direct financial interest in the settling plaintiff's lawsuit. "That kind of interest is a proper subject of cross-examination and proof" at the trial to show bias and motive on the part of the settling defendant when it attempts to prove misconduct by the nonsettling defendant. *General Motors Corp. v. Simmons, supra.* In our case Wallace did not acquire any interest in Little's lawsuit by the settlement agreement, and Little acquired none in Wallace's cross-action against City. The settlement agreement between them would not have been admissible at any stage of the trial. *Miller v. Bock Laundry Machine Co., supra.* Accordingly, City cannot base its claim for reversal on the ground that it was denied the opportunity to offer the settlement into evidence before the jury.

Within the bounds of propriety attorneys must have latitude in making tactical decisions affecting the best interests of their clients in the trial of cases. *General Motors Corporation v. Hebert,* 501 S.W.2d 950 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.). The settlement agreement in question falls within the rule, and we see nothing improper in it. Nevertheless, common fairness dictated that City should have been told of the settlement agreement and all of its terms. The case had reached the final opportunity for the parties to persuade the jury to their theories and views of the evidence, and knowledge or not by City of Little's intended argument on the issues could have affected City's tack and emphasis on the issues in its argument, although City has not asserted that it did. Little should not have remained in the case after settlement without divulging the settlement agreement and its terms to City.

The question remains whether City was so prejudiced by Little's and Wallace's actions that a new trial must be granted. We hold it was not.

The electrical switchgear box in question was in the form of abutting metal cabinets without inner sides where they joined, with a narrow crack from front to back across the top at the joinder. Chilled water pipes constructed by Wallace passed over the switchgear box. At the time of the fire, Precision was in the process of insulating the pipes. Little was standing either directly on top of the box or on boards which spanned the top of the box and rested on its sides. The top was made of sheet metal, but its sides were made of heavy steel. Little had not been on the box more than two minutes when the accident occurred.

City's actions against Wallace and Precision went to the jury upon theories that a short time prior to the fire Wallace had operated the chilled water lines without insulation, that water was caused thereby to condense on the pipes, and that the condensing water dripped onto and into the switchgear box causing the high-voltage electrical equipment in the box to arc, explode, and burn; or that Little's standing on the box caused water which had dripped from the pipes onto the top of the box to suddenly "surge" into the box and produce the arcing, and that Precision had directed

Little to stand on the box. Wallace's and Precision's defensive issues to the jury were to the effect that the fire was caused by City's operation of the electrical equipment in an overloaded condition, and that it was caused by City's failure to properly maintain the electrical equipment in a safe condition, and that if chilled water was run through the pipes prior to insulation it was done at City's request. Little's cluster of issues against Wallace dealt with whether or not Wallace had negligently failed to provide Little with a safe place to work and with certain safety equipment.

On the issues between Wallace, Precision, and City, the jury failed to find that Wallace operated the chilled water lines before they were insulated; found that Little was directed by Precision to stand on the electrical switchgear cabinet, but that such action was not negligence; found City was damaged in the exact amount asserted by it; failed to find that City operated the electrical equipment in an overloaded state; and failed to find that City failed to properly maintain the electrical equipment in a safe condition.

Under the evidence, the jury would have been justified in finding that the explosion and fire were caused by any of the reasons advanced by City or Wallace and Precision. It could also have believed from the evidence that the fire resulted from insulation failure on wire in the switchgear cabinet, or that the true cause of the occurrence was destroyed by the resulting fire and is unknown and cannot be learned.

City does not argue that the jury's answers to the issues are against the great weight and preponderance of the evidence; and they are not.

■ Little's lawyer complied with his agreement with Wallace, and in his argument played down the likelihood of Wallace's negligence on the issues between Wallace and City. Nevertheless, in the light of the whole record, which we need not detail, it is our view and holding that the improprieties committed by Wallace and Little did not cause an improper verdict and judgment in this case. Excepting an-

swers to issues upon which the proof was virtually undisputed, the jury's answers were equally divided in number with and against recommendations made by Little's counsel. The record does not establish that his argument appreciably affected the jury's answers complained about by City, and City's contrary contentions are overruled.

■ Finally, City argues that City and Little were rigidly aligned as "co-plaintiffs" against Wallace and that Little's "new alignment" during argument damaged City's case against Wallace with the jury. This contention is overruled. City and Little were not that close, and the jury would have known they were not. Insofar as the jury knew at the time of argument, City faced possible liability for part of any damages awarded to Little against Wallace, under Wallace's cross-action. Also, to reach Precision, City was required to first establish negligent causation against Little. In violation of its agreement not to argue negligence against Little (according to the testimony of Little's attorney, supra), City opened its argument by vigorously asserting that Little acted imprudently and unreasonably when he climbed onto the switchgear cabinet, that he thereby caused a "deluge of that water" to enter the cabinet, and that the cause of the explosion and fire was "a combination of a man and water." The jury would have known of the adversary status between City and Little during the proof, the arguments, and their deliberation. Under the record, it is doubtful that the jury's answers against City were based upon the asserted capitulation by Little.

The remaining points and contentions of the parties are rendered immaterial by the above holdings and need not be discussed.

The judgment is affirmed.